[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-11493
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 7, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-60224-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BERT DENNIS FREEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 7, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Bert Dennis Freeman appeals his 75-month sentence, and life term of

supervised release, for receipt and possession of child pornography, in violation of

18 U.S.C. §§ 2252A(a)(2), (b)(1), (a)(5)(b), and (b)(2). On appeal, Freeman

argues: (1) that the portion of his sentence imposing a life term of supervised release is unreasonable in light of the 18 U.S.C. § 3553(a) factors; and (2) that his Fifth Amendment due process rights were violated because the district court did not apply a preponderance-of-the-evidence standard in sentencing him to a life term of supervised release. After careful review, we find no error and affirm.[1]

The relevant facts are these. On August 30, 2005, Freeman was indicted for knowingly receiving and attempting to receive material containing child pornography (two videotapes identified as "#7" and "#23"), in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1) (Count 1), and knowingly and intentionally possessing material containing child pornography (videotapes "#7" and "#23"), in violation of §§ 2252A(a)(5)(b) and (b)(2). Freeman pled guilty to both counts and proceeded to sentencing.

According to the presentence investigation report ("PSI"), Freeman was arrested after ordering, receiving, and submitting payment for two child pornography videos, in response to an advertisement on the internet. After his arrest, federal agents also found 83 files of child pornography on his computer hard drive, 68 of which were analyzed and confirmed by agents to involve actual

---

[1] The government contends that we should review Freeman's claims for only plain error because he did not make any objections to the sentence at his sentencing hearing. Because we find no error based on the district court's § 3553(a) analysis, we need not, and do not, reach the issue of whether there was plain error.

children.  The PSI recommended a base offense level of 22, pursuant to U.S.S.G. § 2G2.2(a)(2), and the following adjustments: (1) a 2-level reduction because Freeman's conduct was limited to the receipt of child pornography without the intent to distribute, U.S.S.G. § 2G2.2(a)(2); (2) a 2-level enhancement because the material involved prepubescent minors, U.S.S.G. § 2G2.2(b)(2);  (3) a 4-level enhancement because the material portrayed sadistic or masochistic conduct, U.S.S.G. § 2G2.2(b)(4); (4) a 2-level enhancement because a computer was used in the receipt of the material, U.S.S.G. 2G2.2(b)(6); and (5) a 2-level enhancement because the offense involved more than 10, but less than 150, images, U.S.S.G. § 2G2.2(b)(6).  After a 3-level reduction for acceptance of responsibility under § 3E1.1(a) and (b), Freeman's adjusted offense level was a 27.  With a criminal history category I, Freeman faced a Guidelines imprisonment  range of 70 to 87 months, and a Guidelines supervised release range of any term of years or life.

At the sentencing hearing, Freeman made no objections to the PSI or to the application of the Guidelines.  The district court directed that the details of 14 chatroom conversations between Freeman and other individuals be included in the PSI report as relevant conduct, to which there was no objection.  Freeman presented an expert witness, Dr. Eric Imhoff, a certified provider of sex offender treatment, who opined that Freeman had paraphilia, a condition in which an

individual has engaged in "sexual thoughts, urges or behaviors involving. . . children" for more than six months. Dr. Imhoff also opined that Freeman was treatable, had accepted responsibility, and "present[ed] a low risk for a hands-on offense." Dr. Imhoff then was extensively cross-examined by the prosecutor and thoroughly questioned by the district court concerning the foundation for his opinion regarding Freeman's low risk for recidivism.

The district court also heard testimony from Freeman, his counsel, and his mother who urged the court to "allow [Freeman] to be continued to be monitored, if it's possible, without sending him far away." Defense counsel argued for the district court to impose a lesser imprisonment sentence, and in doing so noted that the court had "unlimited power in terms of supervised release," which would "be an opportunity to make sure that [Freeman] [was] progressing on the right track" and "would be something that [Freeman would] have to live with."

The district court, after considering the aforementioned evidence, along with the advisory Guidelines range of 70 to 87 months' imprisonment and the factors of § 3553(a), sentenced Freeman to a 75-month term of imprisonment followed by a life term of supervised release. The district court stated that the supervised-release portion of Freeman's sentence was "appropriate in this matter based upon [Freeman's] history of deviant sexual conduct, the 83 images of child pornography

4

that were found on his computer, in addition to the offenses for which he stands before the Court and the approximately 14 chatroom conversations in which [Freeman] explicitly discusses and solicits sexual conduct with persons representing themselves to be minor females." This appeal followed.

Freeman asserts that his sentence was unreasonable because the district court did not adequately consult some of the factors listed in 18 U.S.C. § 3553(a). He makes various arguments, some that he raised in the district court and others that he raises for the first time here, in support of mitigation. We are unpersuaded by any of them.

Our reasonableness review is guided by the factors in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005); United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005). And our "[r]eview for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." Id. These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

5

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

. . . .

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Although sentencing courts must be guided by these factors, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005); United States v. Robles, 408 F.3d 1324, 1328 (11th Cir. 2005) (stating that, post-Booker, district courts need not conduct an accounting of every § 3553(a) factor and expound on how each factor played a role in the sentencing decision).

Based on our careful review, with particular attention to the sentencing transcript and the PSI, we readily conclude that Freeman's sentence is reasonable. The district court explicitly stated that it had consulted § 3553(a) prior to imposing a sentence that fell within the advisory Guidelines range. Cf. Talley, 431 F.3d at 788 (observing that "when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one").

6

Before announcing its sentence, the court considered the testimony of Dr. Imhoff, Freeman's mother, and Freeman, and heard Freeman's arguments, all of which pertained to "the nature and circumstances of the offense and the history and characteristics of the defendant," within the meaning of § 3553(a)(1), since they concerned Freeman's family and work responsibilities, his diagnosis for paraphilia, and his remorse and desire for rehabilitation. Moreover, in imposing sentence, the district court highlighted the serious nature of Freeman's crime involving a "history of deviant sexual conduct," including "the 83 images of child pornography that were found on his computer, in addition to the offenses for which he stands before the Court and the approximately 14 chatroom conversations in which [Freeman] explicitly discusses and solicits sexual conduct with persons representing themselves to be minor females." Cf. 18 U.S.C. § 3553(a)(2) (discussing factors pertaining to need for sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant").

We also note that the life term of supervised release is entirely consistent with both defense counsel's argument and Freeman's mother's testimony in favor of continued monitoring rather than a longer term of imprisonment. Cf. id. at §

7

3553(a)(2)(D) (discussing need for sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). Finally, the parties' arguments and the PSI's calculations outlined "the kinds of sentences available," as discussed in § 3553(a)(3). On this record, Freeman's sentence was reasonable.

Freeman's argument that the district court failed to apply a preponderance-of-the-evidence standard in imposing a life term of supervised release is without merit. The government bears the burden of proving the applicability of guidelines that enhance a defendant's offense level. United States v. Cataldo, 171 F.3d 1316, 1321 (11th Cir. 1999). The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing. United States v. Saunders, 318 F.3d 1257, 1271 n. 22 (11th Cir. 2003).

It is well-settled that where a defendant does not object to the facts of the PSI, they are deemed admitted for Booker purposes. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (holding that a defendant admits to the PSI's factual statements about his relevant conduct where he raises no objections to those statements). "It is also established law that the failure to object to a district court's factual findings precludes the argument that there was error in them." United States

v. Wade, --- F.3d ---, 2006 WL 2195284, at *3 (11th Cir. Aug. 4, 2006) (citing United States v. Weir, 51 F.3d 1031, 1033 (11th Cir. 1995); United States v. Norris, 50 F.3d 959, 962 (11th Cir. 1995)). In the case at bar, the facts stated in the PSI, upon which the district court made its factual findings, were admitted and deemed established because Freeman made no objection to "the Court's finding of facts and conclusions of law. . .[or] to the manner in which [the] sentence was imposed," when specifically asked whether he wished to do so. See DE:51 at 22. Thus, the district court properly made and considered the factual findings supporting a life term of supervised release.

**AFFIRMED.**